IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RABIA AHMAD,<br><br>      Plaintiff,<br><br>v.<br><br>CONNECTIONS CSP, INC.,<br><br>      Defendant. | Civ. No. 15-1052-CFC |

Rabia Ahmad, Wilmington, Delaware. *Pro Se* Plaintiff.

Geoffrey Graham Grivner, Esquire, Buchanan Ingersoll & Rooney P.C., Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

December 14, 2018
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

Plaintiff Rabia Ahmad ("Plaintiff"), who appears *pro se,* filed this employment discrimination action on November 16, 2015 pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.* (D.I. 1) Her former employer, Defendant Connections CSP, Inc., ("Connections") moves for summary judgment. (D.I. 33) In addition, Plaintiff has filed a second motion for permission to take oral depositions.[1] (D.I. 32) Briefing on the motion for summary judgment is complete.

## I. BACKGROUND

Connections is a nonprofit organization operating in Delaware that provides a comprehensive array of health care, housing and employment opportunities. *See* http://www.Connectionscsp.org/about-connections/history/ (last visited Dec. 12, 2018). Plaintiff began working for Connections in August 2012 as a drug and alcohol counselor in the Connections Key Program at the Howard Young Correctional Institution in Wilmington, Delaware. (D.I. 33, Ex. C at 32)

On July 16, 2014, Plaintiff filed a Charge of Discrimination (the "Charge") with the Delaware Department of Labor ("DDOL") alleging gender and religious discrimination by a Connections' employee in violation of Title VII of the Civil Rights Act of 1964. (D.I. 1 at 9) The Charge states that Plaintiff was subjected to harassment when inappropriate comments were made about her faith and inappropriate sexual comments were made in

---

[1] The Court will deny this motion. Plaintiff filed a similar motion at Docket Item 23 that was denied as moot on April 12, 2018. (D.I. 31) At that time, the Court advised Plaintiff that leave was not necessary to conduct depositions and she could obtain discovery using the methods prescribed in the Federal Rules of Civil Procedure. (D.I. 31)

2

her presence. (*Id.*) The Charge states that Plaintiff complained, but the harassment continued, and Connections did not take prompt and corrective action to address several internal discrimination complaints even after Plaintiff offered reasonable options to remedy the situation. (*Id.*) On July 2, 2015, the DDOL issued its right to sue notice and on August 17, 2015, the Equal Employment Opportunity Commission issues its notice of suit rights. (*Id.* at 4, 11)

Plaintiff commenced this action on November 16, 2015. The Complaint alleges discriminatory acts occurred on December 8, 2013, when Plaintiff was "refused entry to return to work. They purposely provided fraudulent information to the Department of Labor in retaliation to block me from receiving unemployment benefits." (*Id.* at 2) Plaintiff testified, however, that this statement is not the basis of her lawsuit. (D.I. 33, Ex. C at 25) The basis of her lawsuit is harassment and discrimination. (*Id.* at 26)

Plaintiff did not report any workplace problems during the first year of her employment. (*Id.* at 34-35) She testified that Malcom Duff ("Duff"), a co-worker in the Key Program at the HYRCI, is the only individual who engaged in harassing behavior. (*Id.* at 29, 35) She started having problems with Duff beginning in the fall of 2013. (*Id.* at 35)

Plaintiff practices Islam. (D.I. 1 at 9) She testified that in approximately September 2013, Duff made comments about the Muslim faith, associated it with terrorism, and made derogatory comments about Plaintiff's religious garments and prayer sessions held for Muslim inmates. The comments started out "every now and then" and increased to three to four times per month. (D.I. 33, Ex. C at 35-39) Plaintiff

3

testified that towards the end of her employment with Connections, Duff made sporadic comments about his personal sex life. (*Id.* at 39, 45)  Plaintiff also testified that Duff would repeatedly call out her name; asked her if she drank two sodas that were sitting in front of her; and stated she "looked tired." (*Id.* at 46-47, 51, 53)

Plaintiff mentioned the comments to her co-workers but did not say anything to her supervisors. (*Id.* at 42)  On December 8, 2013, Plaintiff wrote a letter to Duff regarding the uncomfortable work setting. (*Id.* at Ex. C at 43; Ex. D)  Plaintiff carbon copied Director Pettiford ("Pettiford") and four supervisors. (*Id.* at Ex. D)  In the letter Plaintiff told Duff that she sought to "resolve this issue and continue working in the manner of giving our best service to the inmates at this Institution." (*Id.* at Ex. D)  The letter described Duff's conduct which included speaking of sexual conduct in Plaintiff's presence six times (mainly talking about things he had done to other women), calling out her name for no apparent reason 49 times, and speaking inappropriately about the Islamic faith three times (referring to terrorists being Muslim and Plaintiff's Muslim garment). (*Id.* at Ex. C at 45-47)  Plaintiff testified that in response to the letter Pettiford indicated they were going to remove Duff and he "was going to stop." (*Id.* at 44)  Duff's behavior did not stop, although there was an agreement that Duff would not address Plaintiff. (*Id.* at 48-51)

Plaintiff testified that the next time she raised concerns regarding Duff's alleged behavior was May 27, 2014,when she complained that it continued. (*Id.* at Ex. C at 49; Ex. E).  Plaintiff informed the supervisor and director hoping to resolve the issue. (*Id.* at Ex. C at 52)  All parties met, and the issue was resolved. (*Id.* at Ex. C at 53; Ex. F)

4

It was agreed that Duff was not to address Plaintiff in personal matters except issues related to treatment. (*Id.* at Ex. C at 54; Ex. F) Plaintiff was satisfied with the agreement on that day. (*Id.* at Ex. C at 55)

On June 10, 2014, Plaintiff raised concerns because Duff was calling out her name, and it made her uncomfortable. (*Id.* at Ex. C at 57; Ex. G) She gave a written letter of complaint regarding Duff's behavior to supervisor Turner. (*Id.* at Ex. C at 58) Prior to writing the letter, at some point, Plaintiff had requested that Duff's cubicle be moved. (*Id.* at 58) Pettiford and Mr. Lanyon ("Lanyon"), the regional director, indicated that Duff's cubicle would be moved, but this never occurred. (*Id.* at 59)

On June 11, 2014, Plaintiff spoke with a DOC lieutenant who took her to see the deputy warden. (*Id.* at Ex. C at 60; Ex. G) The deputy warden called Lanyon and explained to him what was going on and Lanyon told Plaintiff to go home. (*Id.*) When Plaintiff met with Lanyon on June 12, 2014, she was told that they were going to move Duff's cubicle. (*Id.* at Ex. C at 61-62)

On June 24, 2014, Plaintiff met with Connections HR representative Kristine Earle ("Earle"), and the meeting caused Connections to investigate Plaintiff's harassment claims. (Id. at Ex. C at 62-64; Ex. H). As a result of the investigation Connections determined that Plaintiff's allegations did not rise to the level of actionable harassment, but out of an abundance of caution and in order to foster a positive work environment for all employees, it transferred Duff to another position at a different facility outside of the Key Program. (D.I. 21 at Ans. to Interrog. 7)

5

Plaintiff testified that she went on medical leave in early July 2014. (D.I. 33, Ex. C at 13-17) On September 24, 2014, Plaintiff resigned from employment with Connections as consideration for a Commutation Agreement she entered into with Connections with respect to a worker's compensation claim. (D.I. 33, Ex. C at 15; Ex. I) Plaintiff obtained new employment later that year. (*Id.* at Ex. C at 17-21)

## II. STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

Defendant moves for summary judgment on the grounds that there is no genuine issue as to any material fact. (D.I. 33) Plaintiff's opposition to Defendant's motion for summary judgment consists solely of admitting or denying paragraphs 1, 2, 3, and 4. (D.I. 34) It contains no argument and does not cite to the record. Nor is it accompanied by sworn affidavits or signed under penalty of perjury. The response cannot be relied upon to defeat Defendant's motion for summary judgment. *See Byrne v. Monmouth Cty. Dep't of Health Care Facilities*, 372 F. App'x 232, 233-234 (3d Cir. 2010) (unsworn certification not supported by any documentation or factual testimony is insufficient to defeat summary judgment); *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1984) (nonmoving party cannot simply assert factually unsupported allegations to meet burden at summary judgment).

## III. DISCUSSION

Plaintiff alleges she was harassed on the basis of sex and religion and it appears she is raising a hostile work environment claim. To make out a prima facie claim for hostile work environment on the basis of sex, a plaintiff "must establish 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Hostile work environment claims based on religion are subject to a comparable test. *Abramson v. William Patterson Coll.*, 260 F.3d 265, 276 (3d Cir. 2001). "To

Defendant moves for summary judgment on the grounds that there is no genuine issue as to any material fact. (D.I. 33) Plaintiff's opposition to Defendant's motion for summary judgment consists solely of admitting or denying paragraphs 1, 2, 3, and 4. (D.I. 34) It contains no argument and does not cite to the record. Nor is it accompanied by sworn affidavits or signed under penalty of perjury. The response cannot be relied upon to defeat Defendant's motion for summary judgment. *See Byrne v. Monmouth Cty. Dep't of Health Care Facilities*, 372 F. App'x 232, 233-234 (3d Cir. 2010) (unsworn certification not supported by any documentation or factual testimony is insufficient to defeat summary judgment); *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1984) (nonmoving party cannot simply assert factually unsupported allegations to meet burden at summary judgment).

## III. DISCUSSION

Plaintiff alleges she was harassed on the basis of sex and religion and it appears she is raising a hostile work environment claim. To make out a prima facie claim for hostile work environment on the basis of sex, a plaintiff "must establish 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Hostile work environment claims based on religion are subject to a comparable test. *Abramson v. William Patterson Coll.*, 260 F.3d 265, 276 (3d Cir. 2001). "To

determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). No one factor is dispositive. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

The record does not support a finding that Plaintiff suffered conduct sufficiently severe or pervasive to detrimentally affect a reasonable person. Duff's behavior in repeatedly calling Plaintiff's name does not speak to her sex or religions. In addition, the evidence of record does not support a finding that the comments of a sexual nature were directed to Plaintiff. A plaintiff cannot "meet the first element of the hostile work environment claim under Title VII . . . solely by pointing to comments that were directed at other individuals," although such comments may elucidate whether facially neutral conduct was motivated by discrimination. *Caver v. City of Trenton*, 420 F.3d 243, 263-64 (3d Cir. 2005).

That leaves the comments referencing Plaintiff's religion that began in September 2013 and occurred somewhat sporadically, and by July 2014 occurring three

to four times per month. According to Plaintiff's writings, between July 2013 and December 2013 Duff made three comments amount the Islamic faith (D.I. 33 at Ex. D), but her other written complaints make no reference to comments regarding her religion. Plaintiff testified that Duff would "just say little things" about Muslims committing crimes or being terrorists, he referenced the type of clothing she wore, and he made comments about prayer sessions held for Muslim inmates.

The offhand comments made by Duff regarding Islam were perhaps insensitive and boorish, but they are not the sort of comments one would consider as actionable under Title VII. Also, they occurred infrequently and do not demonstrate a pervasive atmosphere of harassment that was sufficiently severe, extreme, or abusive so that it unreasonably interfered with Plaintiff's work performance. Nor is there any evidence of record from which the Court may conclude that the comments were so severe that they amounted to a "change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788

Accordingly, the Court concludes, based on the totality of the circumstances as testified by Plaintiff in her deposition, that Plaintiff has failed to respond to the motion for summary judgment with a factual showing sufficient to establish that the harassment she claims she experienced was severe or pervasive. The evidence of record does not amount to discrimination based on sex or religion sufficient to support a hostile work environment claim. Therefore, the Court will grant Defendant's motion for summary judgment.

## CONCLUSION

For the above reasons, the Court will: (1) deny as moot Plaintiff's second motion for permission to take oral depositions (D.I. 32); and (2) grant Defendant's renewed motion for summary judgment (D.I. 33).

An appropriate order will be entered.